(No. 24504.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT SCHWABAUER, Plaintiff in Error.

*Opinion filed June 15, 1938—Rehearing denied October 5, 1938.*

CHARLES A. BELLOWS, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error seeks the reversal of a judgment of the criminal court of Cook county entered on a verdict of a jury finding him guilty of taking indecent liberties with a certain male child eleven years of age, as charged in the indictment.

An indictment consisting of four counts charged plaintiff in error, in the first count, with committing a crime against nature; the second, with the crime of buggery; the third, with taking indecent liberties with a certain child of the age of eleven years with intent of arousing, appealing to and gratifying the lust, passions and sexual desires of

plaintiff in error, and the fourth, that he did take certain immoral, improper and indecent liberties with a certain named child under the age of seventeen years, which said acts tended to render said named child under the age of seventeen years guilty of indecent and lascivious conduct. On motion of the People all counts "except the indecent liberties count" were dismissed.

To prove the charge, the prosecuting witness, a boy eleven years of age, testified that on November 29, 1936, about 7:00 o'clock P. M., he was waiting at Grand and Harlem avenues to get a lift; that plaintiff in error stopped at the stop light; that he, the witness, entered plaintiff in error's car and was driven to a point on Oriole avenue, about seventy-five feet south of Addison avenue where the revolting act of taking indecent liberties was committed, and that plaintiff in error gave him a quarter. This witness further testified that, since 1935, it had been his custom to seek lifts, and he had been picked up and given about three hundred lifts by motorists; that the first part of July he was standing at the northwest corner of Addison and Harlem avenues and he first saw plaintiff in error when he picked him up and gave him a lift, and he spent about one-half an hour with him; that about two weeks later plaintiff in error again gave him a lift from the same corner and he was with him about one-half an hour; that early in August, 1936, at Grand and Harlem avenues, plaintiff in error again gave him a lift and took him toward Addison and he was with him about forty-five minutes; that in October, 1936, about 7:00 o'clock in the evening, plaintiff in error came to the back yard where the witness lived, at 3421 Ottawa avenue, and asked if the witness could come out tonight, and upon being told that he could not, plaintiff in error gave the witness and his brother each a dime and went away. He further testified that each time he rode with plaintiff in error the latter was driving a black Chevrolet sedan and on January 2, 1937, he recognized plaintiff

in error's car and plaintiff in error at the police station. On direct examination he testified that he went to a show at the "Montclair Theatre" and, on cross-examination, he testified that he did not, and that he was not sure, but thought he did attend a show at the theater on November 29, 1936; that up to January 2, 1937, he had not told his mother about the ride on November 29 nor what happened on that evening; that before going to the police station with the officer, he had a conversation with his mother relative to the ride he took on South Harlem avenue; that he told the officer he would be glad to identify any moron he could. He further testified that he identified plaintiff in error's car by the spot light on the left side, the button which, by pressing, permitted the front seat to slide back, and the flashlight plaintiff in error carried in the compartment in the dash, inside the car; that he did not take down the license number on the car; that he could not identify the license plate as he paid no attention to it; that he did not recall the color of the wheels but thought they were yellow. On re-direct examination, this witness testified that prior to January 2, 1937, he talked with the Doherty boy or the McCambridge boy about plaintiff in error, and later, that the two last named boys were the boys he talked to before January 2, 1937, about this matter.

The thirteen-year-old brother of the complaining witness testified that he first saw plaintiff in error at Addison and Harlem avenues in the middle of July, 1936, when his brother was getting into plaintiff in error's car and they drove toward Grand avenue; that he next saw him in the latter part of September, 1936, in the back yard of his, the witness', home, around 7:00 o'clock,—it was getting dark,— where he and his brother were chopping wood; that plaintiff in error asked his brother if he could come out and when his brother replied "No," that the plaintiff in error gave him and his brother a dime. On cross-examination, this witness testified that in July, around 7:00 o'clock,—it was

getting dark,—he saw his brother enter plaintiff in error's car; that he, the witness, stood about five feet from his brother and the pavement. On cross-examination, he testified that he did not see plaintiff in error's face in July, when his brother got in the car, but as he got a lift right after his brother he saw plaintiff in error in his car at Grand avenue because the corner was brightly lighted by the drug store; that when his brother got into the plaintiff in error's car, witness "saw his coat in back, but I saw him, anyway, this guy;" that he could see his nose, ears and profile, and his hat, too. He also testified when he saw plaintiff in error at the police station he said: "I don't think he is the man," but testified he changed his opinion after he saw the cap. He testified that he saw a car with yellow wheels in the yard at the police station.

Joseph Dorsch, a State highway officer, testified that he talked to a Mr. Doherty and his son James on January 2, 1937, and looked up in the State automobile license book for the number that Doherty had given him; went to Des Plaines and found a black Chevrolet four-door sedan with yellow wire wheels alongside of plaintiff in error's house; that Schwabauer's mother gave him the keys, and the license plates corresponded with the number Doherty gave him; that officer Notto drove the car to the police station, and that witness arrested plaintiff in error about 6:00 o'clock that evening.

Eleven witnesses for plaintiff in error testified that on November 29, 1936, he was tending bar for William Bahnmier in the Hapsburg Inn on River road, two miles north of Des Plaines, approximately twelve miles from Harlem and Grand avenues, from 6:00 o'clock to 9:30 P. M., and that he was not away from the inn during all of that time. Walter Blazek, from whom plaintiff in error purchased his Chevrolet automobile, testified the wheels on the car were painted black and that he saw the car in July, 1936, and the wheels were black at that time. Plaintiff in error testified that

he bought his car in 1935, that the wheels were black when he bought it and remained that color during all the time he owned it; that the first time he ever saw the complaining witness and his brother was at the State highway police station, at Irving Park and Harlem avenues, on January 2, 1937; that, on that date and at that place, complaining witness' brother did not say anything to the witness but said in his presence, and in the presence of the officer: "No, that isn't the man; he was a taller man and a skinnier man." He denied that he ever saw complaining witness in July, August, September or October; denied that he went to the home of complaining witness and his brother and denied that he ever gave them, or either of them, ten cents. He further testified that on the evening of November 29, 1936, at 7:00 P. M., he was working at the Hapsburg Inn; that he went to work about 1:30 or 2:00 o'clock and worked continually until he left that place, about 10:30 P. M., in the company of his mother and went home.

Four witnesses for the People, in rebuttal, testified that the wheels on plaintiff in error's car on January 2, 1937, were yellow, cream or ivory.

The jury returned a verdict of guilty as charged in the indictment. Plaintiff in error's motion for a new trial specifies that the verdict is contrary to the law and the evidence, and that the evidence does not prove him guilty beyond a reasonable doubt; prejudicial conduct of the State's attorney in the cross-examination of certain named witnesses and error in limiting the cross-examination of the People's witnesses. When the motion for a new trial was overruled the trial judge said: "The testimony in this case is close. There was an alibi here that, to my mind, might have justified the jury finding for the defendant, finding the defendant not guilty. However, they didn't believe it. It is a question of fact for the jury and that is the only thing that is before me." Plaintiff in error's motion in arrest of judgment was also overruled.

The grounds relied upon for reversal are: (1) Where the testimony on which the conviction is based is of an unsatisfactory nature, the court will not hesitate to reverse. (2) The verdict of the jury was a nullity because it did not enable the court to know upon which count the defendant should be sentenced, and, (3) the prejudicial conduct of the State's attorney prevented the defendant from securing a fair and impartial trial.

Complaining witness was a boy of eleven years. So far as the record shows, plaintiff in error was a stranger to him, except for seeing him on the occasions enumerated. The record as to how plaintiff in error happened to be arrested for the crime is lacking in detail as to what caused the arresting officer to believe plaintiff in error was the guilty party, except that a Mr. Doherty gave the officer a license number and, through that, a certain car was found which belonged to plaintiff in error, and he was arrested. While the complaining witness positively identified plaintiff in error, hesitancy and contradictions lessen the value of his identification. His brother's testimony is of little force. He states that when he first saw plaintiff in error in the police station, he said he did not think defendant was the man. His opportunities of identifying him were meager and under circumstances which would make identification difficult. The first time he says he saw him was in the evening, the street lights were on and his brother was between him and plaintiff in error; most of the time he had no opportunity to get a good view of plaintiff in error. The time he testified plaintiff in error came to their back yard, was in October, at 7:00 o'clock in the evening. It is common knowledge that it is dark at 7:00 o'clock P. M. at that time of the year and there is no testimony that any light was cast upon the man which would permit identification of his features.

On the other hand, the testimony of the alibi witnesses was notably identical and some of them testified that all plaintiff in error's alibi witnesses met at Hapsburg Inn on

Thursday night before the trial. The testimony of most of the alibi witnesses, and particularly the proprietor of the inn, was to the effect that, covering more than the period from July 1, 1936, to January 2, 1937, plaintiff in error was at the inn every Sunday from early afternoon until 10:30 P. M., yet one of plaintiff in error's witnesses, a friend named Browning, testified that occasionally of Sunday afternoons plaintiff in error visited him at his home, sometimes staying to dinner, which occurred about 5:30 to 6:00 P. M. and that he had done so during November, 1936. Another feature of the testimony difficult to understand, is the controversy over the color of the wheels of plaintiff in error's car. The People's witnesses, including the complaining witness, described them as cream colored or yellow. Numerous witnesses testified for defendant that they were black and had been no other color since defendant owned the car. Yet there is no controversy that the car which the officer found at defendant's home was his car. The officer testified that Schwabauer's mother gave him the keys to the car. This officer and numerous other persons described the car as having yellow wheels.

It may be seen that the jury might have, as the trial judge suggested, disbelieved plaintiff in error's witnesses. While not unmindful of the rule that where the evidence is conflicting, the duty devolves upon the jury to determine the credibility of the witnesses, and a reviewing court will not disturb a verdict unless palpably against the manifest weight of the evidence, (*People* v. *Hanisch,* 361 Ill. 465; *People* v. *Wynekoop,* 359 id. 124; *People* v. *Blumenfeld,* 351 id. 87;) yet the revolting character of the crime charged, and the unsatisfactory evidence for both the People and the defense, impels us to the opinion that this case should be submitted to another jury.

The basis for plaintiff in error's claim that the court could not know on which count to impose sentence, arises out of the fact that the court, on motion of the State's

attorney dismissed all counts of the indictment except the indecent liberties count. Counsel say that both the third and fourth counts may be so characterized, and that, as the third count charges a felony and the fourth a misdemeanor, it was error to sentence defendant under the third count. The People say the third count, only, remained.

As the case is to be tried again, the State's attorney, in order to avoid confusion, should make it plain upon which count he rests the People's case.

The judgment of the criminal court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*